CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
Erica Choi (Bar No. 302351)
(E-Mail: erica_choi@fd.org)
Deputy Federal Public Defender
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
ERNESTO SALVADOR FLORES

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| UNITED STATES OF AMERICA, | Case No. 2:25-CR-00062-MRA |
|---|---|
| Plaintiff, | |
| v. | **DEFENDANT ERNESTO SALVADOR FLORES'S SENTENCING POSITION; EXHIBITS** |
| ERNESTO SALVADOR FLORES, | |
| Defendant. | **Sentencing Hearing: August 7, 2025. at 10:30 a.m.** |

   The defendant Ernesto Salvador Flores, by and through his attorney, Deputy Federal Public Defender Erica Choi, hereby submits his objection to the Presentence Investigation Report (PSR) and sentencing position. For the reasons explained herein, the defense respectfully recommends a sentence of 36 months' imprisonment, to be followed by three years of supervised release with terms and conditions.

                    Respectfully submitted,

                    CUAUHTEMOC ORTEGA
                    Federal Public Defender

DATED: July 28, 2025        By  /s/ Erica Choi
                    ERICA CHOI
                    Deputy Federal Public Defender
                    Attorney for ERNESTO FLORES

# TABLE OF AUTHORITIES

Page

1   I. INTRODUCTION ..................................................................................... 1

2   II.  MR. FLORES'S HISTORY AND CHARACTERISTICS ......................................... 2

3        A.    Mr. Flores's traumatic childhood.......................................... 2

4        B.    Mr. Flores has a difficult youth and adult life ........................ 3

5        C.    Despite deep trauma and pain, Mr. Flores does his best as a father and
              is a father figure to his nieces and nephew. ............................ 4

6        D.    Circumstances of the instant offense .................................... 5

7   III. OBJECTIONS TO THE PSR ..................................................................... 5

8
         A.    Mr. Flores did not possess the firearm in connection with another
9              felony offense (PSR ¶¶ 24-27). .......................................... 5

10       B.    Sentencing Guideline Range ............................................... 6

11  IV. SENTENCING ARGUMENTS ..................................................................... 6

12  V. CONCLUSION ...................................................................................... 10

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

> Imposing a sentence on a fellow human being is a formidable responsibility. It requires a court to consider, with great care and sensitivity, a large complex of facts and factors. The notion that this complicated analysis, and moral responsibility, can be reduced to the mechanical adding-up of a small set of numbers artificially assigned to a few arbitrarily-selected variables wars with common sense. Whereas apples and oranges may have but a few salient qualities, human beings in their interactions with society are too complicated to be treated like commodities, and the attempt to do so can only lead to bizarre results.

*United States v. Gupta*, 904 F.Supp.2d 349, 350 (S.D.N.Y. 2012), *aff'd*, 747 F.3d 111 (2d Cir. 2014).

Indeed, while the advisory guidelines are a necessary starting point, sentencing is a fundamentally human exercise in human judgment and common sense. The end goal of that exercise is not to calculate numbers, but to measure a man and his circumstances in all their complexity and arrive at a result "sufficient, but not greater than necessary" to achieve all the goals of federal sentencing. 18 U.S.C. § 3553(a).

Ernesto Flores is a 36-year-old father, brother, uncle, and son. He comes before this Court for sentencing. Mr. Flores had an extremely tumultuous childhood in Oxnard, California. He experienced poverty, homelessness, and violence at home. He endured more pain and trauma than a child ever should.

To escape his chaotic home life, Mr. Flores began to spend time on the street. He craved acceptance and community. Unfortunately, he was an easy target for negative influences in the neighborhood he grew up in. Mr. Flores was introduced to drugs and crime at an early age, and went to juvenile hall as a teenager. His adult criminal history reflects periods of relapse and difficult life circumstances. But his history also shows that with structure and support, Mr. Flores does well. He has always worked. He is a present father, brother, and son. He is a father figure to his nieces and nephew.

1

In 2024, Mr. Flores was doing well. He was reporting regularly to his parole officer, working a full-time job, and staying sober. He was living with his children, working hard and making up for lost time. But he lost it all due to a momentary error in judgment. As explained herein, Mr. Flores possessed the firearm in this case for a few seconds. His possession, while undisputedly illegal, was momentary. Mr. Flores now comes before the Court to be sentenced for his offense. He asks the Court to see beyond his error, and to consider the "large complex of facts and factors" that make up his whole history, as well as his potential.

The defense submits that a sentence of 36 months' imprisonment, followed by three years of supervised release, is sufficient and reasonable in this case.

## II. MR. FLORES'S HISTORY AND CHARACTERISTICS



### A.    Mr. Flores's traumatic childhood

Mr. Flores never had a stable home life. Both of his parents suffered from addictions to heroin and crack cocaine. His parents regularly used drugs and were violent with each other in front of Mr. Flores and his siblings. Growing up, his father was in and out of custody for drugs and domestic violence. His mother suffered from

severe mental illness. During episodes of extreme paranoia, she would accuse Mr. Flores and his siblings of "putting things" in her coffee, or installing hidden cameras in the garage they lived in. Before eating, she would make Mr. Flores take a bite of her food, in case it was poisoned. Once, she took food to the hospital and demanded they test it for contamination, believing "they" (her children) were trying to poison her.

Between sixth and ninth grade, Mr. Flores was homeless. He lived in motels, shelters, and sometimes his mother's car. His mother was sporadically placed in 51/50 holds, which would leave his siblings (still children themselves) to take care of him. When his mother was present, she was not affectionate and used fear as a parenting tool. When his father was home, the violence and drug use were unbearable. Nonetheless, Mr. Flores believes his parents did their best. He regrets that his father passed away before they could heal their relationship.

**B.    Mr. Flores has a difficult youth and adult life**

From a young age, Mr. Flores craved stability and acceptance. To escape the chaos at home, he spent time outside, with other kids who had difficult home lives. Unfortunately, he grew up in the heart of gang activity. Mr. Flores was introduced to drugs and criminal behavior as a child. As a teenager, he went to juvenile hall. After that, he was arrested on various misdemeanor offenses between the ages of 19 and 22.

Mr. Flores did achieve a period of stability between the ages of 23 and 27. When his daughter Destiny was born, he changed his life. He stopped seeing people from his old neighborhood. He worked two jobs, one at a roofing company in Goleta, and another doing maintenance at a horse stable in Santa Barbara. He built up his credit, bought a car, and got married to Destiny's mother. They got an apartment together, the first real home Mr. Flores ever had. Mr. Flores, who had never had his own room, felt a sense of purpose for the first time.

Through hard work and grit, Mr. Flores paid the bills and raised his growing family. However, his domestic life was not perfect. His wife was a recovering drug

3

addict. He had unresolved trauma from his past. They had their share of issues. Nonetheless, Mr. Flores was determined to be a present father and husband. Through sheer grit, he stayed sober, worked two jobs to support his family, and gave his all to the marriage.

Unfortunately, his world came crashing down. In March of 2017, Mr. Flores learned his wife was cheating on him. He found out in a traumatic way, witnessing his wife and another man at a motel. Mr. Flores felt like the earth had opened up beneath his feet. Everything he had built, and worked so hard for, suddenly felt like nothing. He lost control, relapsed, and was later arrested for shooting at an unoccupied vehicle (his wife's) and possessing methamphetamine (from his relapse). *See* PSR 54. Mr. Flores felt hopeless. For a while, he stopped caring what happened to him. Perhaps feeling nothing was better than dealing with the pain of infidelity and losing the life he worked so hard to build.

**C. Despite deep trauma and pain, Mr. Flores does his best as a father and is a father figure to his nieces and nephew.**

Despite the dysfunction of his own childhood and relationship with his parents, Mr. Flores has maintained a presence in his own children's lives. He has three minor children who are the light of his life. Prior to his arrest, Mr. Flores was living with his children and their maternal grandmother in Goleta, an hour away from the rest of his family and community. When Mr. Flores paroled out on a prior case, he made the decision to prioritize his children and found a job in the same city they lived in. He intends to support and be there for his children when he is released on this case.

In addition to his children, Mr. Flores has been a father figure to his nieces and nephew. *See* Exhibit A, Support Letters. Mr. Flores has been a pillar and a strong presence in his family members' lives. As his niece's fiancé explains, they hope that Mr. Flores can walk his niece down the aisle when they get married. This is in sharp contrast to the picture of the "serial offender" the government attempts to paint Mr. Flores to be. Mr. Flores's family members--those who have known him longest and

4

know him best--describe him as a "gentle" person with a "loving heart," a person who will "show up for the people he loves" and is "capable of growth and redemption." Exh. A.

### D.    Circumstances of the instant offense

Mr. Flores was doing well last year. In December of 2023, he paroled out of prison. He moved in with his children and mother-in-law in Goleta. He quickly obtained a job at Noodle City in Goleta, where he worked full-time for nearly a year. He completed moral reconation therapy and anger management courses. Exhibit D. He reported regularly to his parole officer. He stayed sober, testing clean every time. He was doing everything he was supposed to do.

On November 3, 2024, Mr. Flores went to the El Rey Cantina to meet his friend Orlando. Orlando had recently been discharged from the hospital, and Mr. Flores looked forward to catching up. Mr. Flores sat at a table in the restaurant. A few minutes later, he heard someone was getting "jumped" behind the restaurant. A crowd started to form in the hallway leading to the back of the restaurant. Mr. Flores followed the crowd. Suddenly, people rushed in from the backdoor of the restaurant towards the front entrance. In the crowded hallway, Mr. Flores saw an object fall to the ground. It was a handgun. Feeling tension in the air, Mr. Flores picked up the handgun. He walked to the nearest door (which led to the kitchen), placed the gun in a basket in the far corner of the kitchen, and then exited the kitchen. He was questioned briefly by police outside, and released. A few weeks later, Mr. Flores was arrested.

### III. OBJECTIONS TO THE PSR

### A.    Mr. Flores did not possess the firearm in connection with another felony offense (PSR ¶¶ 24-27).

The PSR incorrectly adds a four-level enhancement because D.Q., the victim of an unrelated battery, suffered an injury following a fight. There is absolutely no evidence that Mr. Flores was involved in the battery, let alone that he possessed the firearm "in connection with" the battery. These were unrelated events.

Indeed, victim D.Q. contacted defense counsel to clarify that: (1) he knows Mr. Flores, (2) he and Mr. Flores were at the same restaurant on November 3, 2024, (3) they were not there to meet each other, (4) D.Q. was attacked by a group of unknown individuals, and (5) Mr. Flores was not involved in the fight at all. *See* Exhibit C, Declaration of Diego Quintero.

"The government has the burden of proving the facts necessary to support a sentence enhancement by a preponderance of the evidence." *United States v. Pham*, 545 F.3d 712, 720 (9th Cir. 2008). "For the four-level enhancement to apply, the government 'must show that the firearm was possessed in a manner that permits an inference that it facilitated or potentially facilitated — *i.e*, had some potential emboldening role in — a defendant's felonious conduct.'" *United States v. Grimaldo*, 993 F.3d 1077, 1082 (9th Cir. 2021) (quoting *United States v. Routon*, 25 F.3d 815, 819 (9th Cir. 1994)). Here, the government has adduced no facts to support that Mr. Flores possessed the firearm in connection with any battery. The government cannot meet its burden of proof because there are no facts supporting application of this enhancement. To the contrary, the declaration by the victim of the battery makes clear that Mr. Flores was not involved whatsoever. The Court should not apply the 4-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B).

**B.    Sentencing Guideline Range**

The defense submits the correct guideline range, based on a total offense level of 19 and a CHC IV, is 46-57 months.

## IV. SENTENCING ARGUMENTS

"It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon v. United States*, 518 U.S. 81, 113 (1996). Underlying this tradition is the principal that "the punishment should fit the offender and not merely the crime." *Williams v. New York*, 337 U.S. 241, 247 (1949).

The Supreme Court in *Kimbrough v. United* State, 552 U.S 85, 101 (2007), noted that the "overarching provision" in section 3553(a), as modified by *United States v. Booker*, 543 U.S. 220 (2005), is the requirement that courts "impose a sentence sufficient, but not greater than necessary to accomplish the goals of sentencing." Although the United States Sentencing Guidelines are the "starting point and the initial benchmark," the Court "may not presume that the Guideline range is reasonable" and "must make an individualized assessment based on the facts presented." *Gall v. United States*, 552 U.S. 38, 49-50 (2007); *Rita v. United States*, 551 U.S. 335 (2007). Accordingly, the Guidelines range should not be given greater weight than the section 3553 factors. *See United States v. Carty*, 520 F.3d 984, 993-94 (9th Cir. 2008).

A sentence of 36 months' imprisonment is sufficient, but not greater than necessary, to meet the sentencing goals of 18 U.S.C.§ 3553(a). For the past several months in custody, Mr. Flores has reflected deeply on his life and on his offense conduct. He has been haunted by the question of *why* he picked up and moved the gun. It appears that this was a reaction borne out of a lifetime of reacting to tense situations. It was not a thought-out plan. He did not bring the gun into the restaurant. He was not part of any fight. Mr. Flores was not "playing gangster," as has been suggested.

Mr. Flores's decision to possess the gun, even momentarily, was wrong. He understands that what he did constitutes a federal crime, and that he must pay a price for that conduct. He has admitted his crime and accepts responsibility for it. But he has strong family support, and is capable of being supervised in the community. Mr. Flores looks forward to being able to work and support his children, as soon as possible. Three years in federal custody is significant punishment because it is a lengthy separation from his family, including his minor children.

Three years of imprisonment, followed by three years of federal supervision with terms and conditions, is a just and appropriate sentence. This sentence provides sufficient deterrence, punishment, and respect for the law, while also considering Mr. Flores's nature and characteristics and the unique circumstances of this crime.

7

In addition, a sentence of 36 months' imprisonment hews close to the national average and median sentence length for firearm offenses. In fiscal year 2024, the average sentence for all firearm offenses in the United States (including cases where probation and home confinement were imposed) was 24 months, and the median sentence length was 52 months.



United States Sentencing Commission, Interactive Data Analyzer, *available at* https://ida.ussc.gov/analytics/saw.dll?Dashboard.

Excluding cases where probation or home confinement were imposed yields a similar result. Nationwide, in 2024, the average term of imprisonment for all firearm offenses in the United States was 30 months, and the median term of imprisonment was 57 months.



**Average and Median Imprisonment Length**
Fiscal Year 2024

The figure includes the 56,417 cases reported to the Commission. Cases missing information necessary to complete the analysis were excluded from this figure. Sentences of 470 months or greater (including life) were included in the sentence average computations as 470 months. The information in this figure does not include probation or conditions of confinement as described in USSG §5C1.1.
**FILTER:**
Fiscal Year: 2024; Circuit: All; State: All; District: All; Race: All; Gender: All; Age: All; Citizenship: All; Education: All; Crime Type: All; Guideline: All; Drug Type: All; Sentencing Zone: All; Criminal History: All; Career Offender Status: All

United States Sentencing Commission, Interactive Data Analyzer, *available at* https://ida.ussc.gov/analytics/saw.dll?Dashboard. The government's requested sentence of 78 months creates unwarranted sentencing disparities and is not reasonable under the circumstances of this case.

///

9

# V. CONCLUSION

For the reasons explained herein, the defense respectfully requests the Court impose a sentence of 36 months' imprisonment, followed by three years of supervised release. Such sentence is sufficient and reasonable.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: July 28, 2025          By  */s/ Erica Choi*
_____
ERICA CHOI
Deputy Federal Public Defender
Attorney for ERNESTO FLORES

10